UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| | * | |
| ROBERT BLASKO, JR., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 15-30185-MGM |
| WAYNE DOERPHOLZ, et al., | * | |
| | * | |
| Defendants. | * | |
| | * | |

MEMORANDUM AND ORDER REGARDING REPORT AND
RECOMMENDATION ON DEFENDANTS' MOTIONS TO DISMISS
(Dkt. Nos. 10, 18, 24, 33)

March 30, 2017

MASTROIANNI, U.S.D.J.

## I.    INTRODUCTION

Plaintiff, Robert Blasko, filed a nine-count complaint against Defendants Wayne Doerpholz, Andrew Orr, the Municipal Light Board for the Town of South Hadley (the "Light Board"), and the South Hadley Electric Light Department ("SHELD"). Doerpholz, Orr, and the Light Board have filed separate motions to dismiss certain state and federal claims brought against them by Plaintiff. (Dkt. Nos. 10, 18, and 24). Those motions were referred to Magistrate Judge Katherine A. Robertson for a Report and Recommendation ("R&R").

In her R&R, Judge Robertson recommends this court deny Doerpholz's motion in its entirety, deny Orr's motion with respect to Plaintiff's claims for intentional infliction of emotional distress and grant it as to Plaintiff's claims under the Massachusetts Civil Rights Act, MASS. GEN. LAWS c. 12, §§ 11H, 11I ("MCRA") and 42 U.S.C. § 1983 ("§ 1983"), and grant the Light Board's

motion in its entirety. Plaintiff and Orr filed objections to the R&R. Orr and the Light Board replied

to Plaintiff's objections. Following de novo review, the court will adopt the R&R in its entirety.

## II.   STANDARD

### A.   Report and Recommendation

A District Court may refer dispositive motions to a Magistrate Judge for a Report and

Recommendation. *See* 28 U.S.C. §636(b)(1)(B); Fed. R. Civ. P. 72(b). Any party adversely affected by

the recommendation issued may file written objections within fourteen days of being served with the

Report and Recommendation. *See* 28 U.S.C. § 636(b)(1). A party that files a timely objection is

entitled to a de novo determination of those portions of the report, specified proposed findings, or

recommendations, to which a specific objection is made. *Id.; see M. v. Falmouth School Dept.*, 847 F.3d.

19, 25 (2017). Arguments or available evidence not raised before the Magistrate Judge are deemed

waived. *See Guzmán-Ruíz v. Hernández-Colón*, 406 F.3d 31, 36 (1st Cir. 2005). In conducting its review,

the court is free to "accept, reject, or modify, in whole or in part, the findings or recommendations

made by the magistrate judge." 28 U.S.C. § 636 (a)(b)(1); *see Templeman v. Chris Craft Corp.*, 770 F.2d

245, 247 (1st Cir. 1985).

### B.   Motion to Dismiss

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege facts that "raise a right

to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The

factual allegations in the complaint must "nudge[] [the] claims across the line from conceivable to

plausible." *Id.* at 570. A claim has facial plausibility when the plaintiff pleads factual content from

which the court can reasonably infer the defendant is liable for the misconduct alleged. *Ashcroft v.*

2

*Iqbal*, 556 U.S. 662, 678 (2009). Dismissal is warranted only where "the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture." *S.E.C. v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010). When assessing the adequacy of the factual allegations, the court must "accept as true all well-pled facts alleged in the complaint and draw all reasonable inferences in [Plaintiff's] favor." *Evergreen Partnering Group, Inc. v. Pactiv Corp.*, 720 F.3d 33, 36 (1st Cir. 2013). "It is not for the court to decide, at the pleading stage, which inferences are more plausible than other competing inferences, since those questions are properly left to the factfinder." *Id*. at 45.

## III.   Discussion

The court has considered the entirety of the R&R *de novo*. The court agrees with the portions of Judge Robertson's analysis to which none of the parties have objected. Rather than repeat that reasoning here, the court addresses only those recommendations to which the parties have objected. Orr objects to the recommendation to deny his motion to dismiss with respect to Plaintiff's claim for intentional infliction of emotional distress. Plaintiff objects to the R&R's proposal to dismiss the MCRA and § 1983 claims against Orr either for failing to state a claim or because he is entitled to qualified immunity. Plaintiff further objects to the recommended dismissal of the Massachusetts Tort Claims Act, Mass. Gen. Laws Ch. 258, § 2 ("MCTA"), claims against the Light Board.

A.   Orr's Objection

Orr objects to Judge Robertson's recommendation against dismissal of Count IX, which asserts a claim against him for intentional infliction of emotional distress ("IIED"). He argues the claim is barred by the exclusivity provisions of the Worker's Compensation Act, Mass. Gen. Laws Ch. 152, § 1 *et seq.*, or, alternatively, that Plaintiff has not alleged conduct that was "extreme and

outrageous," as required to state a claim for IIED. Judge Robertson rejected Orr's argument regarding the applicability of the exclusivity provision of the Worker's Compensation Act, finding, at this stage of the litigation, the court cannot conclude Plaintiff will be unable to prove facts demonstrating Orr's actions were outside the scope of employment and unrelated to his employer's interests. Orr counters with language from *Doe v. Purity Supreme,* in which the Massachusetts Supreme Judicial Court describes a plaintiff's injuries as "aris[ing] out of the nature, conditions, obligations or incidents" of her employment because the injuries occurred at her workplace during working hours and were caused by a coworker with whom she had no other relationship. 664 N.E.2d 815, 819 (Mass. 1996). However, in *Purity Supreme* the court considered only the applicability of the exclusivity provision to a claim against the employer, not whether or when the exclusivity provision would apply to bar a claim directly against a coworker. In a later case, the Massachusetts Appeals Court distinguished the analysis in *Purity Supreme* from the appropriate, "fact-intensive analysis" applicable when assessing the adequacy of a claim asserted directly against a coworker. *Brown v. Nutter, McClennen & Fish*, 696 N.E.2d 953, 956 (Mass. App. Ct. 1998). As clarified by the court in *Brown*, when considering a motion to dismiss a claim asserted against a coworker, the court must analyze whether the coworker was acting within the course of their employment or to further their employer's interests at the time of their allegedly tortious conduct. The focus is thus on the relationship between the actions of the alleged tortfeasor and their employment, not whether the victim's injuries arose in the course of the victim's employment. This court, therefore, agrees with Judge Robertson's conclusion that the exclusivity provision of the Worker's Compensation Act does not warrant dismissal of Plaintiff's claim that Orr is liable to him for IIED.

Orr has also argued dismissal of the IIED claim is warranted because the conduct alleged did not rise to the extreme level required for a successful claim. Given the history between Orr and his

4

coworkers, the allegations of a physical altercation, and continued hostility despite Orr's awareness of Plaintiff's anxiety, this court agrees with Judge Robertson's assessment that Plaintiff's claim for IIED is sufficiently pleaded to survive Orr's motion to dismiss.

B.       Dismissal of § 1983 and MCRA Claims Against Orr

Plaintiff objects to Judge Robertson's recommendations that this court grant Orr's Motion to Dismiss with respect to Plaintiff's claims under the MCRA and § 1983. Judge Robertson recommends dismissal both because of substantive problems with the claims and because the doctrine of qualified immunity protects Orr from suit. Plaintiff has objected to Judge Robertson's analysis of the claims and her conclusions regarding qualified immunity. The court turns first to Plaintiff's § 1983 claim against Orr, then considers his claim under the MCRA.

1.   Section 1983

"Section 1983 provides a private right of action against '[e]very person who, under color of [law], subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws [of the United States].'" *Bellville v. Town of Northboro*, 375 F.3d 25, 29 n. 3 (1st Cir. 2004 (quoting 42 U.S.C. § 1983). While "not itself a source of substantive rights," § 1983 "provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotation marks omitted). Generally, § 1983 applies only to conduct undertaken by a state actor "in the course of performing an actual or apparent duty of his office." *Martinez v. Colon*, 54 F.3d 980, 986 (1st Cir. 1995).[1]  The doctrine of qualified immunity limits the

---

[1] While there is no simple test for "segregating private action from state action" for purposes of a § 1983 action, Plaintiff may find that the same conduct by a government employee like Orr cannot be the basis for

reach of § 1983 by "shield[ing] from liability 'all but the plainly incompetent or those who knowingly violate the law.'" *Belsito Commc'ns., Inc. v. Decker*, 845 F.3d 13, 22 (1st Cir. 2016) (quoting *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015)).

Judge Robertson recommended dismissal of Plaintiff's § 1983 claim against Orr, concluding the facts alleged provided an insufficient basis from which the court could infer Orr's actions violated either the Fourth Amendment or the Fourteenth Amendment. Additionally, she concluded qualified immunity bars Plaintiff's § 1983 claims against Orr. Because qualified immunity on its own is dispositive, the court turns directly to a discussion of its applicability in this case.

State actors "are generally shielded from civil damages liability under the principle of qualified immunity so long as their actions do not 'violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Kelley v. LaForce*, 288 F.3d 1, 6 (1st Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In order "[t]o avoid a qualified-immunity defense, [Plaintiff] must show (1) that [Orr] infracted his federal rights and (2) that these rights were so clearly established that a reasonable [person in Orr's position] should have known how they applied to the situation at hand." *Belsito*, 845 F.3d at 23. The court is free to address these elements in any order and, if the facts alleged provide an insufficient basis for establishing either element, the court is free to end its analysis there. *See id.*

Plaintiff has alleged that Orr followed him into an office, took a paper from Plaintiff's hand, yelled obscenities at Plaintiff, advanced towards Plaintiff in a threatening manner, pressed the piece of paper into Plaintiff's chest, tried to incite Plaintiff to strike him, and then tried to convince

---

both a claim under § 1983, which requires conduct undertaken under color of state law, and an IIED claim, which is barred by the Worker's Compensation Act if the conduct was undertaken in order to serve the employer. *Martinez*, 54 F.3d at 986.

Plaintiff to accompany him to Doerpholz's office. That conduct, Plaintiff asserts, constituted the use of excessive force during a seizure in violation of the Fourth Amendment and violated Plaintiff's substantive due process rights in violation of the Fourteenth Amendment. He argues qualified immunity is inapplicable here because there "there is nothing novel about the contours of the rights." (Dkt. No. 39, Pl.'s Objections to R&R Re: Defs' Mot. to Dismiss, 7.) This argument misunderstands the qualified immunity analysis and a plaintiff's burden in overcoming a qualified immunity defense.

In deciding whether qualified immunity applies in this case, the court must consider not just whether there is a clearly established right, but "whether the violative nature of [the] particular conduct is clearly established." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). "While the precise violative action at issue need not have previously been held unlawful, the existing precedent from in and out of circuit 'must have placed the statutory or constitutional question beyond debate.'" *Marrero-Méndez v. Calizto-Rodríguez*, 830 F.3d 38, 45 (1st Cir. 2016) (quoting *al-Kidd*, 563 U.S. at 742)(internal citation omitted). Though the court finds the conduct attributed to Orr appalling, the court agrees with Judge Robertson's conclusion that Plaintiff has failed to meet the considerable burden of demonstrating that established case law clearly identified Orr's conduct as violative of either the Fourth or Fourteenth Amendments.

With respect to the Fourth Amendment claim, Plaintiff acknowledges that an unreasonable use of force only violates the Fourth Amendment if the force is employed in the course of either a search or seizure. *See, e.g., Stamps v. Town of Framingham*, 38 F. Supp. 3d 146, 151 (D. Mass. 2014). He does not allege a search occurred, instead arguing Orr's conduct constituted a seizure of Plaintiff. The court therefore considers whether the law clearly established that conduct like Orr's, by a coworker, would have effected a seizure for purposes of the Fourth Amendment.

7

"[A] seizure occurs if 'in the view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *Brendlin v. California*, 551 U.S. 249, 255 (2007) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). This is a demanding standard that is not satisfied merely because an employee fears that leaving an interaction with a coworker will negatively impact the employee's employment status or where a coworker subjects the employee to treatment that is actionable under state law. *Fournier v. Reardon*, 160 F.3d 754, 757 (1st Cir. 1998) (finding no seizure when a drill instructor placed handcuffs on a trainee as punishment for failing to follow rules in absence of evidence indicating trainee was not free to request the removal of the handcuffs). Plaintiff has alleged Orr followed him into a room, yelled at him, approached him, touched him with a piece of paper, verbally tried to incite him into a physical altercation when asked to desist, and unsuccessfully tried to compel him to accompany Orr upstairs. Plaintiff specifically did not acquiesce to going with Orr to another office. Without something more, the court cannot conclude that given the circumstances, a reasonable person would not have felt free to leave, let alone that a reasonable person in Orr's position would have understood his actions to have effected a seizure. Orr is, therefore, protected by the defense of qualified immunity.

Similarly, Plaintiff has failed to establish that Orr should have understood that his conduct would violate the clearly established law related to substantive due process under the Fourteenth Amendment. Plaintiff has not identified any cases which establish that conduct like Orr's, reprehensible as it was, would violate Plaintiff's substantive due process rights. Additionally, Plaintiff's attempt to distinguish this case from *Kennedy v. Town of Billerica*, 617 F.3d 520 (1st Cir. 2014), a case Judge Robertson relied upon in concluding the conduct alleged by Plaintiff was insufficient to support a claim that Orr violated Plaintiff's substantive due process rights, is unpersuasive. While *Kennedy* involved a motion for summary judgment rather than a motion to

dismiss, that procedural difference does not prevent the First Circuit's analysis from being relevant here. As this is a motion to dismiss, the court simply must apply that First Circuit's analysis to all the facts alleged by Plaintiff, rather than just those the facts supported by evidence in the record.

In *Kennedy*, the First Circuit concluded the conduct of a police officer who repeatedly kicked the plaintiff's car while she was in it and screamed obscenities at her for several minutes was not "'so brutal and so offensive to human dignity' that it gives rise to a substantive due process violation," even if that conduct arose in the context of a "decade-long campaign of harassment." *Id.* at 540. Analogizing to the facts alleged by Plaintiff, Judge Robertson concluded the conduct attributed to Orr was insufficiently egregious to support a claim that his conduct violated Plaintiff's substantive due process rights. This court agrees with Judge Robertson; certainly the specific details of Orr's conduct are different from those in *Kennedy*, but on balance they are no more brutal or offensive than the conduct of the police officer in *Kennedy*. This court's assessment of Orr's conduct is, therefore, constrained by the First Circuit's conclusion that the police officer's conduct in *Kennedy* was not sufficiently egregious as to violate the plaintiff's substantive due process rights. Consistent with Judge Robertson's recommendation, this court concludes Orr is entitled to the protections of qualified immunity because it was not clearly established that his conduct would violate Plaintiff's substantive due process rights.

2. MCRA

The contours of Plaintiff's MCRA claim against Orr are less clear than those related to his claim under § 1983. With respect to his § 1983 claim, Plaintiff clearly identifies the Fourth and Fourteenth Amendments as the sources of the rights Orr allegedly violated. Plaintiff's MCRA claim is not based on the same violations as his § 1983 claim. Also, Plaintiff was free to frame his MCRA

9

claim to be consistent with his IIED claim, rather than his claim under § 1983 since, unlike § 1983, the MCRA allows suits against private individuals. Such an approach could allow Plaintiff to argue that qualified immunity should not shield Orr from the MCRA claim. *See Lynch v. City of Boston*, 180 F.3d 1, 13 (1st Cir. 1999) ("Government officials have qualified immunity from personal liability for actions taken while performing discretionary functions.").

Plaintiff has not, however, taken such an approach, and this court need not address it. *See Guzmán-Ruíz*, 406 F.3d at 36. Instead, he makes the same arguments against qualified immunity as applied to the MCRA claim as he makes with regard to the § 1983 claims. As in the case of the claim under § 1983, Judge Robertson recommended dismissal based on both a failure to state a claim and the applicability of qualified immunity. Following de novo review, the court agrees with Judge Robertson's reasoning.

Plaintiff bases his MCRA claim on violations of his asserted rights to continued employment and his right to a safe working environment without citing any cases recognizing such rights in the context of claims between coworkers. Pursuant to the CBA, Plaintiff has asserted a contractual right to a safe working environment and continued employment. Those contractual rights may constitute property interests to which a constitutional right to procedural due process attaches. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). For example, courts have specifically recognized that an employee may enjoy a right of continued employment with a municipal employer that is protected by procedural due process such that improper discharge amounts to a constitutional violation. *See, e.g., Concepción Chaparro v. Ruíz-Hernández*, 607 F.3d 261, 266 (1st Cir. 2010) (holding that where "plaintiffs had a property interest in continued employment under state law," that property interest "is a recognized procedural due process right").

Here, however, Plaintiff asserts his rights were violated by a coworker who did not have direct obligations to Plaintiff via the CBA. Plaintiff's failure to identify a clearly established right violated by Orr provides sufficient basis for the court to grant Orr's motion to dismiss as to the MCRA claim. To the extent Orr was acting within the scope of his employment, Orr's qualified immunity defense provides an additional basis for the court's decision given the absence of established law marking Orr's conduct as violative of clearly established rights.

As Plaintiff focused his argument, and Judge Robertson focused her discussion, on the question of whether Plaintiff had adequately alleged that Orr's conduct included threats, intimidation, or coercion, the court also addresses the question of threats, intimidation, and coercion. As discussed in detail in the R&R, under the MCRA, direct actions that violate secured rights are not actionable under the MCRA unless they include "threats against, or intimidation or coercion of, a particular individual or individuals" and "such threats, intimidation, or coercion interfered with that individual's exercise or enjoyment of rights secured by law." *Planned Parenthood League of Mass., Inc. v. Blake*, 631 N.E.2d 985, 989 (Mass. 1994). With respect to Orr's actions during his altercation with Plaintiff on December 13, 2013, Plaintiff argues Orr used force to, at least in part, try to coerce Plaintiff into a physical altercation or a trip "upstairs," where Doerpholz might sanction Plaintiff. Plaintiff has alleged Orr had an egregious history of aggressive, even violent, behavior towards his coworkers that directly interfered with the safe working environment of his coworkers, but direct violations alone do not satisfy the requirements of the MCRA.

While, for purposes of the MCRA, violence can be threatening or coercive, it can only be so when used to secure some end beyond the mere infliction of violence, such as to facilitate an unlawful search, to compel a person to give up a protected property right, or to prevent a person from exercising their First Amendment rights. In this case, Plaintiff has certainly alleged facts from which the court

11

can infer Orr was a workplace bully. However, this court agrees with Judge Robertson: the alleged facts related to the incident on December 13, 2013, even construed in the light most favorable to Plaintiff, do not provide a basis for the court to infer the existence of a secondary end beyond simple bullying.

With respect to the second set of actions, Judge Robertson concluded nothing beyond speculation could justify construing Orr's largely non-verbal conduct between the afternoon of December 13, 2013 and February of 2015 as intended to pressure Plaintiff not to make future reports to the police regarding Orr's conduct. This court agrees. Again, Plaintiff has alleged that Orr had a history of aggressive conduct that predates Plaintiff's report to the police. Plaintiff does not allege Orr knew of the police report when he stared Plaintiff down at the end of the day on December 13, 2013 and the rest of the conduct occurred months after the police report was filed. The complaint does not allege Orr has ever stated a reason for his aggressive behavior or otherwise indicated he intended his behavior to achieve a particular result. In the absence of factual allegations connecting Orr's conduct with efforts to interfere with Plaintiff's exercise of specific secured rights, Plaintiff's MCRA claim Orr cannot survive Orr's Motion to Dismiss. *See Goddard v. Kelley*, 629 F. Supp. 2d 115, 128 (D. Mass. 2009) ("On its face, the MCRA contemplates a two-part sequence: (1) the defendant threatens, intimidates, or coerces the plaintiff, in order to (2) cause the plaintiff to give up something that the plaintiff has the constitutional right to do.").

C.     Dismissal of the Claim Asserted Against SHELD

Finally, Plaintiff objects to the R&R's recommendation that Plaintiff's claim against the Light Board be dismissed as barred by the exclusivity provision of the Worker's Compensation Act. Plaintiff contends the exclusivity provision of the Worker's Compensation Act applies only to common law

claims and his claim against the Light Board, a public employer, is a statutory claim because it is brought pursuant to the Massachusetts Tort Claims Act ("MCTA"), MASS. GEN. LAWS ch. 258, § 2. As explained in the R&R, this theory is flawed because the MTCA did not create new bases for liability for public employers in Massachusetts, but simply eliminated a common law bar against such claims. *See Morrissey v. New England Deaconess Ass'n–Abundant Life Communities, Inc.*, 940 N.E.2d 391, 397-402 (Mass. 2010). Not only is the applicability of the exclusivity provision to public employers clear from the language of the two statutes, Massachusetts courts have applied the exclusivity provision to bar claims against public employers. *See, e.g,. Foley v. Boston Hous. Auth.*, 555 N.E.2d 234, 235 n.3 (Mass. 1990). The fact that a litigant bringing a claim against a public employer must comply with the provisions of the MTCA, including the presentment requirement, does not convert a cause of action based in common law into one based in statute.

## IV.   CONCLUSION

For the reasons set forth above, the courts adopts the recommendations in the R&R (Dkt. No. 33). Upon de novo review, Doerpholz's Motion to Dismiss (Dkt. No. 24), to which no objections were filed, is DENIED in its entirety. Orr's Motion to Dismiss (Dkt. No. 18) is DENIED with respect to Plaintiff's claim for IIED and ALLOWED as to Plaintiff's MCRA and § 1983 claims against Orr. Finally, the Light Board's Motion to Dismiss Count VI (Dkt. No. 10) is ALLOWED.

 _/s/ Mark G. Mastroianni_____
 MARK G. MASTROIANNI
 United States District Judge